May it please the court, your honors, my name is Jason Mettinger. With me at council table was Mr. Ray McKenzie. Together we represent the United States in this matter. Your honors, respectfully, the district court committed multiple errors here. First and foremost, the judge didn't provide any due deference to Judge Nichols, who issued the warrant here. Additionally, the district court failed to apply and even cite the applicable precedents of this court. In addition, the district court didn't afford good faith to a warrant that went through multiple layers of review. Essentially, what we think the district court did here was conduct a de novo weighing of probable causes if the district court were the issuing judge. And under Gates, that's not appropriate. And we believe respectfully that all of these errors, either singly or combined, mandate reversal. So we respectfully ask that this court would reverse and allow this case to go to trial. Now I'd like to start first and foremost with the probable cause determination. We respectfully submit that there was probable cause here. If you look at the warrant... Probable cause for what? Probable cause for drug possession. That's something that we conceded below. That's Joint Appendix page 60 and 61. And that's what we've argued here. Is this the problem that the warrants sort of went far beyond what one would normally search for with respect to simple drug possession? So here, if you have probable cause for drug possession, that does get you into the house. And what he's indicated was, on Joint Appendix page 204, everywhere that I was going to be searching for drug possession is the very same place where eventually he found the firearms. Computers, electronics. So if you look at what he was searching for, not only was it drug possession that was in the warrant, that's Maryland Code 5-601, he also cited a 5-623 as a specific Maryland... Who's he? I'm sorry. The officer in the warrant. So he was looking for... What is that, the second statute? So it's a statute that says that if someone is committing a drug crime, any drug crime, and this one possession would apply for it, if they are using, making financial transactions to either conduct that business or disguise that business, that's evidence that you can look for. Business of drug possession? Correct, Your Honor. So let's say he's buying drugs or texting someone to say, hey, I'd like 10 grams of drugs. We're talking about a civil infraction here. So, Your Honor, if you look at Robinson v. State, that's the Maryland State case, and that says that drug possession, marijuana possession specifically, of any quantity is illegal. So regardless of what the final penalty is, whether it's a misdemeanor or a civil infraction, it doesn't matter. One of the things that concerns me just at the outset here is, you know, just how far we are going with these trash pulls, and you know, I'm willing to say that trash pulls have a place in law enforcement, but I'm not sure that just any trash pull will do because they are, there's a particular danger, it seems to me, of being saying that officers have carte blanche to go through someone's trash and there's also, when you have someone's trash, you're never sure whether it's the occupant's house trash, or neighbor's trash, or some other resident's trash, and you're never sure that somebody's not being set up. And so, you know, is it a valid tool of law enforcement? Yes, under the right circumstances, I think it is, but the problem is that, you know, in and of itself, apart from the warrant, it's an invasion of privacy to have officers just searching willy-nilly through somebody's trash. Well, I guess I would push back a little, Your Honor, in the sense that, one, when you abandon trash on the curbside, it's essentially abandoned property. So it's not, there's no Fourth Amendment protection in your trash once you put it to the curbside. You abandon the property, but I'm not sure you abandon your Fourth Amendment rights. And let me mention one thing that, you know, I wrote the, I think I did, the Monteith opinion, and I'm also aware of the Gehry opinion, but in both of those cases, the trash poles had a lot more basis than they had here, because in Monteith and Gehry, you had specific tips that the officers had that had led to the arrest, what the specific tips were. And the, in Monteith, when the, when the trash pole was executed, there were packaging materials, residue, burnt marijuana, cigarettes, stems, and there was a specific tip that the resident had, and then the affidavit also included the defendant's prior criminal record involving drug offenses. And then in Gehry, you had much more than you had here. You had a trash pole with, with plastic bags, with heroin residue, foil, baggies, packaging materials. So, you know, under those circumstances, you can, you know, you can see that the trash pole has some validity, but, but that's just much more than we have here. This is, this is pretty skimpy. Well, Your Honor, I guess my view is this court has held, frankly, that, that the odor of marijuana alone is enough. And here, we don't have just the odor. That was the Humphreys case that decided that. Here, we don't have the odor. We actually have the drugs themselves. The odor of marijuana emanating from a residence or a car alone is enough for a probable cause. Well, Your Honor, I guess I'm limited in the sense in the record that there was no averment that there was a high crime area here. It was, um, I would say a little bit more of a lower-class neighborhood. But in terms of the... What did you find? What did he find in the trash can? So, we found three marijuana stems. He found, he, he also found three packs of rolling papers. You didn't mention that until your gray brief, did you? No, Your Honor. We put that in our opening brief, kind of everything that was in the warrant. What led you to this particular trash? So, I'm glad you asked that, Your Honor. And it kind of gets to the question that you were asking earlier about these tips. There was this tip that there was information, and we know now what it was. He got it from Detective Bunce, who's a homicide detective. The homicide detective said that we found a body, and that body had a cell phone on it. And one of the last people that was in that phone call was Mr. Lyles' number. Was that presented to the judge? So, the specifics of all of that was not. What was given to the judge was that there is information related to unlawful activities in that house. What does that mean? I mean, that's just completely useless. Well, what I would say, Your Honor, is I think it explains the reasonableness of the officer here. In other words, he's not, and I can't remember, maybe it was Judge Winn that asked this question. We're not just willy-nilly going to everybody's trash and saying, oh, we found drugs in this person's trash. Let's try to get a warrant for that house. That, I think, might be unreasonable. But what we have here is an officer that. Did you have a warrant to search the trash? No, and again, Your Honor, we didn't, I don't respectfully think we needed one. Once you put trash on the curb, you can, it's gone. Okay. I get that. You don't need a warrant. But doesn't that, I'm concerned about this particular form of investigation for this reason. As we've mentioned, you don't need a warrant. And yet, at the same time, you can call it abandoned property. But at the same time, there is a certain privacy element into it, in that you're not abandoning it just to the public as a whole. You're abandoning it to the people that are going to collect the trash. Well, I mean. This can just, it can give officers a free license to just go through people's trash on the flimsiest of notions. And then to use a very, you know, I don't approve of the three stems of marijuana, but to use the three stems of marijuana to, in turn, conduct a comprehensive, more than comprehensive search of someone's home. But my reservations are less with the plain view principles and everything, as with the fact that these trash poles can get out of hand. And this one seems to me to be pushing it awfully far, because as I read Monteith and Gary, there were so much more. Right. And you would agree to that, wouldn't you? Well, I think Monteith had stems, and Monteith had the saran wrap, which I think suggests a little bit more on the distribution side. So I'm going to agree with you there. We don't know how many stems were in Monteith. But I'll say in Gary, it was actually just residue. So, in other words, I actually think we have more drugs than, frankly, what was in Gary. But to address the concern you have, Your Honor, about this willy-nilly law enforcement. Well, they had damaging materials in Monteith. Exactly, Your Honor. So, again, I think Monteith. Residue in burnt cigarettes and stems. They had the whole business. Right. I agree. Monteith had more, but I actually think we have more than Gary. That's my argument, Your Honor. But I do want to get back to Judge Diaz's question, because I think it helps answer the concern that you have. This tip. We didn't just go to every house on the block saying, let's try to find a house that has drugs in it. We only went there because the tip said that this particular house, Mr. Lyles', was associated with a drug-related homicide. That gives us the reasonableness to say, okay, we're going to take this next step and look at trash. And then when we find drugs in the trash, we go and test them. Why isn't the judge fully apprised of that, then? So there's a really good answer for that. This was a murder investigation. There was a question, frankly, as to whether Mr. Lyles was the trigger puller, the getaway driver. Maryland law on search warrants, they don't get sealed forever. Sometimes they come out from under seal very quickly after the execution of the warrant. So if the officer puts all of that in there, maybe Mr. Lyles is a target, maybe he's a cooperator, you're essentially going to out the fact that you know that Mr. Lyles is associated with that murder. So that's why he put it in there, frankly, a little bit more vague than... I would imagine a judge would have some discretion as to what to disclose with respect to a warrant and when? Well, so the officers could go back and explain why it needs to be under seal and things of that nature. But I'm glad, Your Honor, you mentioned this idea of the discretion of the judges because that kind of gets us to this good faith section and maybe we have a reasonable disagreement as to... The tip that you received, this tip about activity in the house, apparently that didn't give you enough information to get a warrant. The tip alone? So it certainly wasn't explained in the warrant enough. Like, let's say he decided to throw all of his cards on the table and go through the phone analysis of why... You don't really want to go through the trash. You want to go in and search the house. You really want to go in and see what was in this house. You've got this tip. Something is going on in the house. It seemed to me developing that evidence put aside, it didn't matter to Judge Wilkerson's point about the trash and maybe some element of privacy there. When you have trash within the curvature of the house, there's an understanding, at least I believe, there's some element of control that still remains there. When you push it out to a curb, it's in the public domain. Everybody that walks by, everybody that drives by, can throw something in that trash. I hate to tell you, I've done that in my neighborhood. Jogging around, I've got a bottle of water, and I finish the bottle, and I have a bottle of trash, I throw the bottle in the trash can. I don't think my neighbors objected to that. And I can only imagine there is a great propensity for anyone who has an illegal substance in your hand, and if you, a marijuana stem, that's not something they probably need to do anything with. They want to discard that. I mean, that's like a paper wrapper. That's not the marijuana itself. They're not throwing away anything valuable. And so you get something that's not valuable, and you have to be in that area. You've got these stems. There's a trash can. Throw it in that little trash can and keep running. You don't have to worry about it or walking. That's the danger here is that that's all that's in this case. Well, to be clear, a couple things. One, factually, inside that trash was also mail addressed to that address. In other words, so that it provides some reasonable belief that, let's say you throw out those credit card statements you have or whatever, that it's actually your trash and not just some jogger in the neighborhood. There's no question that all of that trash, all of it was theirs. The question is, was the marijuana stem theirs? I didn't say someone came by and threw all the trash in the trash can for them, and it wasn't the house. I'm just saying what you're concerned about are these stems, three stems in a neighborhood as you such described. Not unreasonable someone put those stems in there, but to use that as a basis, where does it go from here? I mean, what are we going to say with a case? If we go your direction, what is it going to tell you? It doesn't matter what neighborhood you live in. Someone just gives you a tip. We don't even know the credibility of the tip. Just someone says, well, we think there's some activity that's illegal in that house there, and we're going to go over and search this trash can. We find three stems. Now we're going to go in this house, and we have a warrant that allows us. It looks like to me, oh, it just went to everything. From those three stems, there's a list, a larger list of things they're looking for that's well beyond three stems in that trash can. See, you might not want to put, to follow up on my colleague's point, you might not want to put those three stems in your own trash can. You might want to put them in somebody else's trash can. I mean, it's just the problems with it now is with regard to this tip, I take your point that for Leon purposes and good faith purposes, information that's, this is under Judge Motz's opinion in McKenzie Goode, which is that for Leon purposes, good faith purposes, evidence that's known to the officer but not disclosed in the affidavit still counts toward Leon good faith. And we've upheld that principle a number of times, but in the instances where we've upheld it, the evidence that was known to the officer and not disclosed in the affidavit was mentioned in the briefing at least with some degree of specificity as to what it was. But this seems to me sort of vague as to what this tip was. If it was more concrete, that would be something else. But my basic question is that I think this may be one of those areas, Fourth Amendment areas, that's fallen between the cracks a little bit because in listening to the colloquy with you and my colleagues, it doesn't seem to me that there is any bar, since no warrant is required, or the police just deciding on the abandoned property rationale that they can just go through any trash that they want. But even if it's on the sidewalk, the person whose trash it is doesn't sever all connection with the contents of it. Well, Your Honor, I guess my red light is on, so I would love to answer all of these questions, but would you like me to answer them in rebuttal or would you like me to handle them now? Well, I have another question after you're done. Okay. I just don't want to exceed my time, Your Honor. Your time has not expired until you have dealt with Judge Diaz's question. Great. Thank you, Your Honor. Appreciate that. So to get first to your question, Your Honor, and actually to Judge Wynn's point as well, I think this is where, frankly, we get into good faith, and this is where that saves the warrant. In other words, maybe there's this alternative reality where maybe a jogger runs by, unties the trash, throws some marijuana stems in there, and runs away. Maybe that is a fact. Well, maybe it's a guess who's there. People come in, it's a party. Some people... And my point, Your Honor, is that was a decision that Judge Nichols made to say, I actually think the most reasonable explanation here is this was Mr. Lyles' trash. This was Mr. Lyles' drugs. And even if altogether now in this room we could come up with different alternatives, we don't get to do that. We get to say, Judge Nichols, we're going to give due deference to you. That was your determination. If he wanted more information on that tip, if he said, gosh, Detective McCloskey, that tip is pretty darn vague. You've got to give me more. He didn't do that here. Judge Nichols said, this is enough. McCloskey said, okay, you're the judge. And then he ran off and got the warrant. Well, let me follow up. So this is enough. And this goes back to my earlier question about this warrant and exactly what it was that they were authorized to search for. You mentioned two statutes, one dealing with drug possession and then the other one, I guess, dealing with related material with respect to violation of the drug laws. The problem that I have is, I mean, given the amount of drugs, the materials that were found in this trash pull, what is the basis for searching for the breadth of items in this warrant to include photographs and video recordings and the like? I just don't get that. Well, so it goes to – those specific ones go to attribution and identity. In other words, you want to know, to Judge Winn's point, that it's actually his house, he lives there, if he's got photos of himself there, that suggests he lives there, and that it's not some – he was just an overnight guest. So all of the things, there's 13 things in the warrant attachment. There was also some indication here that this is sort of a standard form warrant that this officer uses regardless of the case or circumstance. Am I remembering that correctly? So there is something in the record of that effect, Your Honor, if you look at it. What I'm concerned about is whether or not this is akin to a general warrant as opposed to one that is sufficiently specific to comply with the Fourth Amendment. So we respectfully submit it's not. If you look at the 13 things in there, in our view, and we're going to leave the 12th one, firearms, out for a second. If you look at 12 of the 13 of them, they are all reasonably related to drug possession. And actually expressly they say we want to look for photographs, et cetera, et cetera, to the extent they relate to the aforementioned violations. In other words, we're only looking for photographs to the extent they relate to and help us prove drug possession. So in my view, it's not a general warrant. A general warrant in the Gros case, that's a Supreme Court case. How does seizing jewelry relate to drug possession? Well, so, you know, that goes to the Section 5-623 statute that I mentioned, that they mentioned in the warrant. This is the idea that if there are some financial transactions related to a drug crime, then we can look for evidence in that. We're beyond possession at that point in dealing with trafficking and the like. Is that what you're saying? Well, you can pay for drugs in various ways. I guess my point is if you look at all of them, let's even say that, you know, for whatever reason, and we talked about firearms, we conceded below that those weren't covered by the PC, that, you know, it was overbroad in that respect. It still doesn't matter in the sense that the remedy is we exclude them. Other things like that? I don't believe toiletries were mentioned, Your Honor, but I do think there were a number of things in there. But look at certainly the vast majority. Again, we've conceded that firearms, there was no PC for that. You found three stems of marijuana. You can get a warrant to go in with a laundry list of these items to search that house. Well, so if you look at the drug itself, drug possession, that crime, that does allow you to search. I understand that's the next case that comes along. Right. The next trash can found in the house, you look right in there and you see three stems. Of course, you didn't need three stems, you need one stem. Because three wasn't a magic number, so one stem. You got that, go to match, get a warrant, go in there, search everything in the house. Talked about it. Well, you can take drugs and put them anywhere. In other words, so it does give you the chance to look for anywhere drugs could be found. And if they're found in the basement as they were here or the kitchen as they were here or the master bedroom is. It is, yes, Your Honor. If you find one stem in anybody's trash can outside their house, you can get a warrant like this. So that's what the case law supports and that's our answer. But I'll say, Your Honor, if you disagree, then well. I just want to know, is that what you were saying? You just said to me, anybody's trash can outside the house with one stem of marijuana entitles you to get a warrant of the nature that's here to go and search virtually everything in that house. It doesn't matter if that trash can is on the street or across the street. As long as that trash can, if it has the same house number as this house number, that's the house you can go to and search. Well, Your Honor, if the trash is across the street. Anybody walks by a trash can, throws a stem in there, they can go to every trash can around there and throw one stem in everybody's trash can and say, you know what, I believe, I'm going to give you a tip, I believe there's marijuana in those houses. They can go to every one of those houses and search every house up there because they found one stem of marijuana. True? That's the only logical conclusion based on the case law that we have here. But I'll say, Your Honor, if you do disagree, then it's Judge Nichols' job to say, that's crazy. I'm not disagreeing with you. I just want to know the answer to that question. That's all. And, Your Honor, again, let's say, for example, Judge Nichols thinks that's a bridge too far, then he says, you're not going to get the warrant and you've got to give me more. And so that gets us into our good faith argument. I just want to be clear. I'm not making a judgment call. I just want to know the answer to the question. And I gave you the facts. Someone can walk by 10 trash cans, stick one stem in there. Somebody else calls and gives a tip and says there's activity in those houses around there. Trash can. Officers go to every trash can, get this warrant and go in every one of those houses. Correct, Your Honor. But you're not even suggesting that you need the tip, are you? That you could just go in and conduct it. If you wanted, there would be no legal impediment to just going house by house by house by house over a whole block or series of blocks to see if you could find a stem or three stems of marijuana and then get a warrant that completely searches the whole house. So if you look at the Thurman case in Briscoe, that's what they say. To that sort of behavior. You're saying we don't need reasonable suspicion. We don't need probable cause. We don't need any kind of showing to search the trash. And that once we can, you know, there's a danger here. And it's not only a danger of privacy, but there's a danger of just people being set up, of an officer planting the stem of marijuana in the trash or a neighbor putting it in to throw suspicion on someone else or a guest in someone's house. Doing that, it just seems to me there ought to be something, you ought to do something a little more than what you've done to get this broad an authorization on the basis of three stems of marijuana in someone's trash. I don't know. You're claiming an awful lot of unchecked authority here. And, Your Honor, I'll submit that you don't actually have to agree with me to reverse here. Again, if we look at the good faith issue and we look at what Judge Nichols said, Judge Nichols looked at these facts and said, I actually find it perfectly reasonable. The most reasonable explanation that I can think of is that this was Mr. Lyles' trash, this was Mr. Lyles' drugs, this was his rolling papers, and these were mail that was addressed to him because it was in that trash, it was right out in front of that house. Maybe there's these other alternative crazy scenarios we can all think of. But, again, that's de novo review. That's what Gates says we can't do. I'm not crazy about the hypothetical I gave you because you said yes. I'm not crazy about that. That means you couldn't do it. Again, Your Honor, we can all think of hypotheticals here. Your answer to Judge Nichols, Judge Wilkerson, I asked you, I put the tip thing and he says, you don't need the tip. And your answer is yes, you don't need the tip. If someone goes, 10 trash cans, stick one stem of marijuana in those trash cans, you can go look in that trash can, you find that stem, you can go in there and get this one on every house. Yes, Your Honor. Again, and under case law, this is Thurman from the Eighth Circuit. They said a trash pull alone is enough. Kelowna said that. And they had Frank's issues in there. So they had that statement and they excised them because of the Frank's issues. In the Fourth Circuit, our precedent is clear. We haven't said that all trash pulls are illegitimate or that all trash pulls are per se not relevant to securing a warrant. We've said quite the opposite, that they are relevant facts to include in an affidavit for a warrant, that there's no per se prohibition against them. We haven't even said that you've got to get a warrant in order to do a trash pull. But then it comes along a case that just pushes the whole thing to an extreme. And you say, well, wait a minute, something that seemed reasonable, which is the ultimate Fourth Amendment touchstones onto one particular set of facts, when you keep pushing it, pushing it, pushing it, suddenly you run into a case where you say, wow, this just seems to me to go very far. Just in all candor, I'm not aware of any circuit which has held that you need some sort of reasonable suspicion or anything to get into trash. And I can consult with my colleague to see if he's aware of any, but I'm not. That's not what we have said, and it's not what I'm saying at least. What I'm concerned about is that it gives open, it just encourages these trash pulls, if you're saying one stem or two stems of marijuana, it provides a sufficient basis for a rather broad and invasive search. And it encourages, protects your trash pulls and, you know, it opens up an avenue into the home. It opens up a gateway into the home that at some point, at some point, because the home is crucial to the Fourth Amendment, at some point that gateway into the home becomes too broad. And it may be that this set of facts presents that case. That's all I'm saying. I'm speaking solely for myself, but I'm concerned about what happened here. I understood, Your Honor, and I do hear your concerns. And maybe what I would say about this case is maybe actually it isn't the right case. And the way I say that is to what I was mentioning with Javier Diaz. This wasn't an indiscriminate, hey, this is a high crime, let's check everybody's trash. In other words, they don't go to that house unless they get that tip from Detective Bunce. It doesn't matter from your perspective. It doesn't. But in this case, that's the truth. Writing an opinion like this leads to that result. Well, I think you could. When you're dealing with these specific facts, it's not limited to just those facts, because those facts are not all here. What you're saying is one stem in anybody's trash can outside their home allows you to get a warrant. Right. That's what I'm saying, Your Honor. But what you could say is that one stem plus this tip is a limiting principle. That's all I'm asking. Right. And, again, I think if you look at Thurmond, that's what it says. That's what the Eighth Circuit has said. That's what other courts have said. So I think it's reasonable for the officer to believe that. Okay. Thank you. Thank you. Mr. McBeth. Good morning, Your Honors. And may it please the Court, Colin McBeth on behalf of Mr. Liles. There are two independently sufficient reasons that this Court should affirm the district court suppression order. First, the only crime for which the affidavit even arguably established probable cause was simple possession of a personal use amount of marijuana. But the factual basis for that crime in the affidavit was extremely skimpy, to use Judge Wilkinson's word, and a reasonable officer could not conclude based on that warrant that probable cause existed. Second, even if this Court believes that probable cause as to possession did exist, to Judge Diaz's point, the evidence of simple possession is a small, insignificant part of the items to be seized. And so in a well-established exception to the severance doctrine, the entire warrant was invalid, precluding officers' good faith reliance on it. I don't know. That goes pretty far. I don't think we need to get into that if you're correct on the first basis of your argument. That's true. This Court could affirm simply on the first basis. So I'll start by addressing that, Your Honor. The government has conceded that there was no probable cause as to drug distribution. So the only potential crime at issue here is drug possession. And there are essentially two facts that might support that conclusion. The three very small marijuana stems found in the trash and the three packs of rolling papers. And those facts are insufficient both because of the small quantity of drugs and because of the lack of a temporal connection between the trash and the home. So as to quantity, the Sixth Circuit recognized in Abernathy that quantity of drug paraphernalia recovered from the defendant's garbage is crucial in determining whether probable cause existed. And that's because with marijuana, as with any other substance, a large quantity of drug refuse suggests repeated and ongoing drug activity, which makes it reasonable to assume that more drugs remain in the house. But when the amount is very small, we don't have that same inference. It's the same common-sense inference we would make with regard to any substance. I'm just trying to understand what's found in the trash.  I don't believe so, Your Honor. I'm not sure, Your Honor. We also don't know how large these rolling papers were, how big a pack was. It doesn't say whether there were five papers in a pack or 10 or 50. We also know that rolling papers can be used for perfectly lawful purposes. People use them to roll cigarettes, tobacco cigarettes, all the time. And this Court has to construe the record in the light most favorable to the prevailing party below, which is Mr. Lyles. So I think that that fact, I'm not sure why someone would throw that away, but I don't think it adds much to the probable cause in this case. What's the reasonable inference that you say can be drawn from the items that were seized in the trash? That at some point in the past, there was some small amount of marijuana in the home, perhaps. Although, as this Court has suggested, maybe not even that because— Why does it have to be in the past? Why do you say that? Well, if it's in the trash, it doesn't have to be. But I think the most logical inference with a small amount of a substance like that is that it's no longer in the home. And that's true for two reasons. One is I think we would make that inference with any substance. So if, for instance, the police searched the trash and found 30 empty Diet Coke bottles, we would reasonably assume that someone in that home really likes Diet Coke. And so we're likely to find more Diet Coke in the home. But if they search the trash and find two Diet Coke bottles, we wouldn't make that same inference. We would think, well, maybe someone had a Diet Coke or two over the course of a week, two weeks, however long this trash has been out there or it was accumulating in the home. But we don't necessarily assume there's more in the home. Of course, when you're dealing with a warrant, you're dealing with probabilities. I mean, it's not an absolute inference one way or the other. Obviously, by definition, an inference is not absolute. But so, I mean, these are rough guesses. They don't need to be exact. So it's equally, why wouldn't it be equally probable that two marijuana stems might suggest that there still remains some user amount of marijuana? So, again, it's certainly possible. The fact that they're in the trash does not rule out the possibility that there's more in the home. The question is, what is the most reasonable inference? And as the Sixth Circuit explained in Abernathy, they said, quote, In the context of drug crimes, information goes stale very quickly because drugs are usually sold and consumed in a prompt fashion. And so the more probable inference upon finding drug refuse is that whatever drugs were previously in the residence had been consumed and discarded. In other words, drugs are not usually the kind of thing you simply leave lying around the home precisely because they are legal. So you. What do you think are the reasonable inferences here other than there was illegal consumption of drugs in the home? Well, again, I'm not disputing that that probably happened at some point in the past. But one, it's such a small amount of marijuana that I don't think it's reasonable to assume that there's more in the home. And two, there's a lack of a temporal connection between the trash and the home. And what I mean by that is, one, as I just said, drugs usually get consumed promptly. You obtain them. You use them. You throw away the rest. They're not the kind of thing you leave lying around. But are you conceding with that answer, the fact that there would be at some point in the past the illegal use of illegal substances in that particular home? No, not necessarily, for the reasons that Judge Wynn and I think Your Honor were getting at earlier, that people do, you know, they're out jogging or whatever, they're walking by, they put trash in a trash can. That's just, I've done that too. My basic concern, I come back to it, is that these trash poles are subject to abuse. And the concern here is that when you have evidence this skimpy and a warrant this broad, you know, is this sweeping. And so you could have, there's something else going on in this case that I don't understand, and it has to do with the homicide and the tip and whatever. So I don't understand. But that's not fully developed in the records, so I don't know that I can take it into account really. But it's just that the technique of these, we can set up a sort of a paradigm which police departments can just say, well, hey, this is something that we don't, there are very few constraints on. We don't need probable cause. We don't need reasonable suspicion. We can just go, and if we find something or somebody, then we can get a super broad warrant. And that's surely reasonableness under the Fourth Amendment requires some degree of proportionality, I would think, between what you find and the breadth of the warrant that you secure. And, you know, there again it's the skimpiness of the evidence in the trash pull that bothers me. The breadth of the warrant doesn't bother me per se, as long as it's a more serious crime that's being investigated. But for all I know from what's in this record, you've got a very small infraction, as far as I can tell from the trash pull, and a very broad warrant. And the home is implicated. And it's the disproportion between what was discovered in the trash pull and the open-ended nature of the warrant that is troubling here. It is, Your Honor. And that's, I think, why in every other case where a trash pull has been used to justify a home search, there has been stronger evidence. So in all the cases that the government cites... The stronger the evidence for something, then the broader the warrant can be, because there are more likely different places to find that evidence. Correct, Your Honor. But if all you have the evidence of is simple possession of marijuana, that doesn't support a broad warrant, whereas a more serious crime might, because you could find the evidence in more different places. It's the lack of proportionality that is troubling. It is. I agree, Your Honor. And I think in all the cases that the government cites, one or more of a number of factors are present. Either, first, they found greater quantities of drugs in the trash, or there was evidence of distribution, which are both making it more likely that there are more drugs in the house. So that's the case in Briscoe. That was the case in... These quantities are below a distributional level. Oh, absolutely, yes. And I'm saying I think this would be a different case if... It's a civil infraction, isn't it? It is, Your Honor. Which doesn't mean it's legal, and you can't, you know, search for illegal substances. There's no problem with that. The facts of this case are just very not good from the government's point of view, in my judgment. I agree. And so, you know, again, those cases that the government cites feature either larger quantities of drugs or evidence of distribution, or in some of those cases, there were multiple trash pulls that revealed marijuana. So that was the case in the Billion opinion from the Seventh Circuit. Or there was additional information in the Warren Affidavit, for instance, that there was a specific tip. You could have a number of things. You could have multiple trash pulls. You could have more serious evidence for a single trash pull. You could have a trash pull combined with specific credible tip information, which is fleshed out in some detail, either in the affidavit or the briefs or whatever representations. We don't have any of that here. Exactly, Your Honor. It's not here. Right. This is a uniquely skimpy record, to use your word. And no court has found that probable cause exists on these facts. The two cases that are closest to on point are Abernathy, which we talk about in our briefs, and the Seventh Circuit's opinion in McDuffie, which the government cites in its reply brief. In that case, the police officer said in the affidavit that he had found, quote, an amount of suspected cannabis in the trash, but also that there was a tip from an informant about nonstop and obvious drug traffic at the residence, that he saw the defendant hide crack in the backyard, the defendant had prior convictions for drug crimes. And the Seventh Circuit said in that case that each of those things individually, meaning including the cannabis, would not be sufficient to establish probable cause. And that's what we have here. We have a small amount of cannabis and nothing more. So for that reason, we think this was not a warrant that an officer could rely on in good faith. But I'd like to transition with the rest of my time, if I may, to the second issue, which goes to the overbreadth of the warrant. So even if this court finds that there was probable cause as to possession or that it was arguable and the officer could rely on good faith on that part of the warrant, the evidence under the items to be seized that related to simple possession was a very small portion of the items to be seized. Courts generally follow a severance doctrine, which says that evidence seized pursuant to an invalid part of a warrant is suppressed and parts seized. Your two arguments are linked, actually. They are, Your Honor. I don't see them as wholly separate. They're not. And in both cases, I'm saying for the second argument, even if the court thinks there's probable cause or that it's arguable, the warrant is still invalid in whole. And that's because under an exception to the severance doctrine, which is discussed in the Sells case and we discuss in our brief, if the valid parts of a warrant are an insignificant part of the warrant, or if the invalid parts make up the greater part of the warrant, then the entire warrant is invalid and all evidence must be suppressed, not just the parts, not just the evidence. I know that I go with you on the severability stuff. I understand, Your Honor. The Sells court, that's the 10th Circuit case, said, and I'll just quote here what they said, that every court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant. Well, you don't need to get into the severance doctrine. I mean, because that's. You don't. That's highly contentious and it gets across. You know, you have to meld it with plain view principles and all, you know, all kinds of questions about just how likely are you to find evidence of this and that. And those are empirical questions as to whether you are likely, more or less likely, you know, 40 percent, 60 percent, what chance of finding what evidence where. And my view is, my thought is, we don't need to go there other than to suggest that this is an extraordinarily broad warrant where the actual underlying offense is, to put it gently, not the most serious one in the world. That's why it's a civil infraction. Your Honor, you're absolutely correct. You don't need to go here. I just want to provide the support as food for thought for an alternative holding if members of the court are interested. But I respectfully disagree that this implicates plain view because when a warrant basically tends toward a general warrant, meaning that the invalid parts. The whole plain view principle depends on the legitimacy of being in a position to exercise plain view, and then that takes you back into. Well, it does, exactly, Your Honor. But the point is that when the entire warrant is invalid, the officers do not have the legal right to be in the house because the warrant is invalid in total. And that's what every court to consider this question has said. The Tenth Circuit has said so, the Ninth Circuit, the Second Circuit, every court according to cells. And in this case, the evidence of possession is really just a small part of the evidence to be seized. The warrant talks about books, records, documents, video recordings, computers, diaries, calendars, photos, on and on and on. None of that has to do with possession of drugs. The third statute referenced in the warrant had to do with money laundering. It's a money laundering statute. People don't launder money from possessing drugs. They launder the proceeds of distributing drugs. They also keep records of distributing drugs, but they don't keep records, generally speaking, of possessing drugs. This evidence, or this warrant, if you look at it in a sort of common sense, holistic way, is clearly aimed at getting at evidence of drug distribution, not drug possession. And so the warrant in sum, in total, is invalid. And there are a couple of cases that are pretty directly on point on this. So the Powers case, which we cite in our brief, in that case, police obtained a warrant to search a home for three classes of evidence. One was evidence of a robbery, one was evidence of drug distribution, and one was evidence of drug possession. And the district court in that case said that as to the robbery and distribution, the PC was clearly insufficient, but that it was a closer question on the simple possession. But notwithstanding that it was a close question on the possession, the court said that the warrant is invalid in total because the possession evidence is just a small part of the warrant. And significantly, the court said, for that reason, the officers also could not rely in good faith on the warrant because anyone who looks at this... Those are some very far-reaching propositions that you mentioned ago. It seems to me that it's just thinner and more contentious ice than the basic point you want to make, which is that this was very different from Monteith and Gary. And it was, Your Honor. And again, I think this court can decide this case simply on that basis, that the probable cause here was uniquely meager. We have three tiny stems of marijuana in what the affidavit describes as four large trash bags. It was an insufficient basis for a warrant that was this wide-sweeping and broad. Exactly. And, Your Honor, there's also no evidence in the record about, for instance, how long the trash had been sitting outside. It might have been there for two days. It might have been there for a week. There's no evidence in the record about how long the trash had been accumulating in the house before it was put out on the curb. That could have also been a week, two weeks. I don't know that they have to prove their case. They don't have to prove that, Your Honor. But all of this just goes to show that it's not reasonable to assume that just because you find three tiny stems in four large trash bags that could have been there for some unspecified period of time, that on that basis we should assume there are more drugs in the house, especially given that, again, drugs are something that are consumed quickly and then discarded as the court recognized in Abernathy. Well, I think you've chewed that bone. Yes. Thank you, Your Honor. I did chew that bone. Let me ask my colleagues if they have any questions. Sure. We don't have any questions. Okay. Thank you, Your Honor. All right, Mr. Medinger, come on up. Thank you, Your Honor. I would like to spend the bulk of my time in rebuttal talking about good faith because I think that let's assume, for example, that we say that on the probable cause side this wasn't enough. We do have to look at good faith. And what we have here under Messerschmitt, we have an officer who went through several layers of review. He had a supervisor look at it. He had the district attorney look at it. And then he had a magistrate judge look at it. And everybody said this is sufficient. And, you know, Detective McCloskey doesn't have a law degree. He reasonably relied upon everybody that said this was sufficient. He also looked at the status of the law. He had, you know, Gary and Monteith all saying if you find contraband in the trash, that's an indicia of probable cause. There was nothing to indicate to him. And there's no culpability on his part. In other words, there was no nefarious acts that he was doing. I don't want my comments to be misconstrued. I'm not saying that this officer is a bad actor or that he wasn't subjectively trying to do the right thing. It's just I'm concerned about the fact that these trash poles are just getting totally out of hand. Right. And, Your Honor, if that's the guidance that this court gives, that's fine. But I think still under good faith, we should still prevail here. In other words, even if we say, Detective McCloskey, you were wrong on the law. Okay. He understands that now. But at the time that he submitted this warrant, he had plenty of indicia to say this is perfectly okay. Perfectly okay to search in this broad of a fashion because the district judge below found no probable cause, plus the warrant was just so patently overbroad that as a result, I'm not going to apply the good faith exception. Right. And it gets to the exact same point. In other words, the attachment was the same one that the supervisor approved and that the judge approved. In other words, I've had a number of occasions where a judge would come back to me and say, you need to tailor that attachment down, counsel. You don't have enough here. And we do that. And we are grateful for the magistrates for doing that because it keeps in the four corners. But here. It's a combination of things. It's a skimpy basis for the warrant with really, in essence, the three stems. And it's the overbreadth of the warrant in relationship to possession of marijuana. And it's both of those in combination, those two points, make it a tough case for the government. It's not just one of them. It's the combination of both of them that make it seem to me to be a tough case from the standpoint of the Fourth Amendment. Again, I don't want to chew the bone myself, but it's very little evidence for a very, very broad warrant. And that's why it's a tough case from your point of view. Well, your Honor, I guess in our view, I'm just trying to put myself in the shoes of Detective McCloskey and what would a reasonable officer do. And I think if the district judge disagreed, you know, sort of post hoc, okay, that's fine. But ab obitio, when he's submitting that warrant, I think he's acting reasonably. And as a result, we have to apply good faith there. And, again, even if this court provides some guidance, then, okay, we know that going forward. But in this case, we think good faith prevails. The other thing that I do want to mention, because I took my break just because I think this court actually and Gary addressed the hypothetical you had, Judge Winn, about the joggers and things of that nature. And here in that opinion, Gary, it's page 327 of the opinion, the appellant has offered circumstances in which a trash can evidence might have come from some other residence. But what the court said here is a finding of probable cause doesn't require absolute certainty. So, in other words, even if the defendant is saying somebody else put that in my trash, we've already talked about that hypothetical. And Gary said it doesn't matter. It doesn't defeat probable cause. So I did want to mention that. So, Your Honor, we also submit that the Boomer case, it's an unpublished case. That was a good faith case based on trash pulls. So we do think if you look at what this officer did, what the good faith doctrine says, we do think there's a reversal in that. Can I follow up with that? Because you seem to be relying heavily on the fact that this went through a chain of command or protocol where everybody signed off on it. Do you have a case that says that that's outcome determinative? So I have Messerschmitt, which is the Supreme Court case. It doesn't say outcome determinative, Your Honor. What it does say is it provides further support for the conclusion that there was probable cause there. It's just something to consider in the balance along with the problems with the warrant and the lack of PC, right? Right. But, you know, one can imagine cases sometimes officers, because of evolving circumstances, they just go right to the commissioner themselves. They don't go through this layer of review that Detective McCloskey did here. So in those cases, essentially the officer is kind of left in the wind. He doesn't have the same kind of indicia we have here. What did the district court say about that, if anything? So the district court, if I remember right, essentially didn't really address it. In other words, the district court didn't address this layer of review issue. That's another error that we say was committed because I think what the district court just said was, I think this warrant isn't right. I'm just going to throw the whole thing out and sort of didn't look at, you know, Herring says we have to look at the culpability of the officer, and here there was none. And, again, these multiple layers of review do mean something. Again, what does a reasonable officer believe? He's not a law, doesn't have a law degree. If a bunch of lawyers are telling him this warrant's okay, he reasonably should believe it is. And that's why we respectfully ask this court to reverse. All right, we thank you. We'll come down and greet you both, and then we'll move into our last case.
judges: J. Harvie Wilkinson III, James A. Wynn Jr., Albert Diaz